1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
Benjamin Heikali (State Bar No. 307466)
Email: *bheikali@faruqilaw.com*
Ruhandy Glezakos (SBN 307473)
Email: *rglezakos@faruqilaw.com*
Joshua Nassir (State Bar No. 318344)
Email: *jnassir@faruqilaw.com*
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Counsel for Plaintiff Melissa Majak*
*and the putative Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MELISSA MAJAK, individually and on behalf of all others similarly situated, | CASE NO.: 2:21-cv-9445 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CATALINA SNACKS INC., | |
| Defendant. | |

CLASS ACTION COMPLAINT

1   Plaintiff Melissa Majak ("Plaintiff" or "Ms. Majak") brings this Class Action

2 Complaint against Catalina Snacks Inc. ("Defendant" or "Catalina Crunch"), on

3 behalf of herself and all others similarly situated, and alleges upon information and

4 belief, the following:

5          **<u>NATURE OF THE ACTION</u>**

6   1.  Plaintiff brings this consumer protection and false advertising class

7 action against Defendant regarding its misleading business practices with respect to

8 the labeling, marketing, and sale of its Catalina Crunch® Cinnamon Toast cereal

9 product (the "Product").

10   2.  Defendant has marketed, advertised, and labeled the Product with

11 representations that lead consumers to believe that the Product contains cinnamon,

12 when in fact, it does not. These representations include the name of the Product

13 "Cinnamon Toast"—and the prominent display of cinnamon powder and cinnamon

14 sticks on the front label of the Product.

15   3.  Despite being characterized as a "cinnamon" cereal, the Product does not

16 contain its characterizing ingredient (i.e., cinnamon). Instead, the Product contains

17 "Natural Flavors," a lab synthesized ingredient, used to give the Product its cinnamon

18 flavor. Because the Product fails to actually contain cinnamon, the labeling of the

19 Product is false and misleading.

20   4.  Had Plaintiff and other consumers known that the Product does not

21 contain cinnamon, they would not have purchased the Product or would have paid

22 significantly less for it. Therefore, Plaintiff and other consumers have suffered an

23 injury-in-fact as a result of Defendant's deceptive practices.

24   5.  Thus, Plaintiff, on behalf of herself and all others similarly situated,

25 brings this case seeking damages, restitution, declaratory and injunctive relief, and

26 all other remedies this Court deems appropriate.

27 / / /

28

-1-

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

7.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with the State of California, and/or otherwise intentionally avails itself of stores and markets in the State of California through the promotion, marketing, and sale of the Product in this State (including in this District) to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Product in this District.

**PARTIES**

9.     Plaintiff Melissa Majak is a citizen of California and resides in Cerritos, California. In July 2021, Ms. Majak purchased the Product from a Costco Wholesale retail store in Cypress, California. Based on the name of the Product ("Cinnamon Toast"), and images of cinnamon powder and cinnamon sticks on the front label, Ms. Majak reasonably believed that the Product contained cinnamon.

10.     Had she known that the Product did not contain cinnamon, Ms. Majak would not have purchased the Product or would have paid significantly less for it. Thus, Ms. Majak suffered an injury-in-fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent business practices, as described herein.

11.     Despite being misled, Ms. Majak would purchase the Product in the future if it did in fact contain cinnamon. While Ms. Majak currently believes the

-2-

Product does not contain cinnamon, she lacks personal knowledge as to Defendant's specific business practices, leaving a doubt in her mind as to the possibility in the future that the Product might conform to the representations made on the front label, and actually contain cinnamon. This uncertainty, coupled with her desire to purchase the Product, and the fact that she regularly visits stores which sell the Product, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the false and/or misleading representations alleged herein.  In addition, Class members will continue to purchase the Product, reasonably but incorrectly believing that it contains cinnamon, absent an injunction. Further, money damages alone are an inadequate remedy, as Class members will continue to purchase the Product.

12.    Defendant Catalina Snacks Inc. is a Delaware corporation which maintains its principal place of business in New York, New York. Defendant, directly and/or through its agents, is responsible for the manufacturing, packaging, marketing, distribution, and sale of the Product in California, including in this District.

## FACTUAL ALLEGATIONS

### I.    Catalina Crunch and the Product

13.    Catalina Crunch is a fast-growing snack company that operates in a competitive market that vies for consumers seeking healthy snacks.

14.    To compete in this arena, Catalina Crunch sells a variety of keto-friendly cereals, including the Product, marketed as healthy alternatives to cereals that have been traditionally high in sugar and low in nutritional content.

15.    On the front label of the Product, Catalina Crunch includes several representations that lead consumers to believe that it contains cinnamon, when in fact, it does not. These representations include the phrase "Cinnamon Toast" in the name of the Product, and the prominent display of cinnamon powder and cinnamon

-3-

1   sticks on the front label (*see below*).

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CLASS ACTION COMPLAINT





16.    Despite being labeled and characterized as a cereal that contains cinnamon, the Product lacks this important ingredient. Instead, it is flavored by an ingredient described as "Natural Flavors," which are lab synthesized ingredients.

17.    Failing to include cinnamon in the Product, despite the cinnamon representations on the Product's front label, is deceptive and misleading to reasonable consumers, including Plaintiff and other Class Members.

## II.    Consumer Demand for Cinnamon in Cereal Products

18.    The healthy snack market has grown significantly in recent years due to consumers who have become increasingly health-conscious and are seeking products with functional flavors like cinnamon. Such ingredients are considered functional because they serve to not only flavor a product, but also provide additional benefits that promote good health.

CLASS ACTION COMPLAINT

19.   "Spices play a vital role in developing the taste and flavor in food products, and also contain numerous health beneficial properties. Due to this, the demand for healthy and flavorful spices such as cinnamon is growing."[1]

20.   "Cinnamon is known for its sweet taste that increase the flavor and taste profile of food products. Additionally, cinnamon also possesses health beneficial properties, such as antioxidants that fight against free radicals and prevent damage to cells. Moreover, cinnamon also helps manage blood sugar and cholesterol levels. All these factors are playing a major role in the growth of the global cinnamon market."[2]

21.   In comparison to cinnamon, which is sought after by consumers for its health benefits, Natural Flavors are often highly processed ingredients that contain a host of chemical additives.

22.   "In reality, 'natural flavors' are a far cry from what consumers might expect, as they can contain both artificial and synthetic chemicals (often used as processing aids)."[3]

23.   In fact, there can be as many as 100 chemicals in a single natural flavor[4], such as solvents, emulsifiers, flavor modifiers and preservatives, which often make

---

[1] *Global Market Study on Cinnamon: Rising Demand for Healthy and Flavorful Species Augmenting Market Growth*, https://www.persistencemarketresearch.com/market-research/cinnamon-market.asp (last visited December 6, 2021).

[2] *Id.*

[3] Matthew J. Goodman, *The "Natural" vs. "Natural Flavors" Conflict in Food Labeling: A Regulatory Viewpoint*, 72 Food & Drug L.J. 78 (2017).

[4] Ocean Robbins, *Everything You Need to Know About Natural* Flavors, https://foodrevolution.org/blog/natural-flavors/ (last visited December 6, 2021).

-6-

CLASS ACTION COMPLAINT

1    up 80 to 90 percent of the mixture in a natural flavor.[5]

2         24.    Companies, like Defendant, use Natural Flavors because they are

3    cheaper to use than ingredients like actual cinnamon.[6]

4         25.    However, Natural Flavors often contain a wide array of ingredients that

5    are not desired by consumers. "Besides the use of synthetic solvents and synthetic

6    carrier systems, consumers also may not be thrilled to learn of the many ingredients

7    in natural flavors that often have nothing to do with the named ingredient."[7]

8         26.    Thus, it is clear why consumers seek out and value products made with

9    actual cinnamon, rather than Natural Flavors. Indeed, in response to such demand,

10   there are several similar products on the market that do in fact contain cinnamon.

11   For example, General Mills' Cinnamon Toast Crunch has a similar name "Cinnamon

12   Toast Crunch" and has cinnamon swirls on the front label of the product. *See*, *infra*,

13   ¶ 28. Unlike Catalina Crunch, General Mills does in fact include cinnamon in its

14   cereal.

15        27.    Cinnamon Toast Crunch is a particularly telling comparison because it

16   is no secret that Defendant's founder and CEO was inspired by mainstream snacks

17   and cereals—like Cinnamon Toast Crunch—when he first began developing

18   Catalina Crunch. "Like many kids, mainstream snacks and cereals were a

19   memorable part of my childhood."[8] "I wanted delicious snacks that would satisfy

20

21   _____

22   [5] David Andrews, *Synthetic Ingredients in Natural Flavors and Natural Flavors in

23   Artificial* Flavors, https://www.ewg.org/foodscores/content/natural-vs-artificial-
     flavors/ (last visited December 6, 2021).

24   [6] Monica Watrous, *What's Inside Natural Flavors?*,

25   https://www.foodbusinessnews.net/articles/17385-whats-inside-natural-flavors (last
     visited December 6, 2021).

26   [7] *Id.*

27   [8] https://us.catalinacrunch.com/ (last visited December 6, 2021).

28                                      -7-

my cravings but weren't loaded with all the sugar and empty carbs. So in 2017, I started baking low carb versions of all my favorite snacks."[9]

28. Indeed, on Defendant's website it states, "With Flavors like Cinnamon Toast, Catalina cereals will remind you of your '90s favorites and fill you up each morning."[10]

29. Clearly, Defendant markets the Product as a healthy alternative to Cinnamon Toast Crunch. However, Cinnamon Toast Crunch actually *has* cinnamon (*see below*).



[9] *Id.*

[10] *Id.*

CLASS ACTION COMPLAINT

30.     There are examples of other cereals that have cinnamon representations nearly identical to those of the Product, but actually contain cinnamon. They include Snack House's Cinnamon Swirl Puffs® Keto Cereal and Wonderworks®' Cinnamon Keto Friendly Cereal (*see below*).



**Ingredients:** Milk Protein Isolate, Allulose, Sustainably Sourced Palm Kernel Oil, Nonfat Milk, Whey Protein Concentrate, Vanilla, Cinnamon, Natural Flavors, Stevia, Monk Fruit, Sunflower Lecithin, Salt

-9-



**Ingredients: Milk Protein Concentrate, Erythritol, Allulose, Whey Protein Isolate, Inulin, Palm Kernel Oil, Palm Oil, Soluble Corn Fiber, Canola Oil, Cinnamon, Rice Starch, Soy Lecithin, Natural Flavor, Stevia Extract. Vitamin E** (mixed tocopherols) **Added to Retain Freshness.**

31. Thus, it is clear that there is a consumer demand for cereal products with cinnamon, and that consumers reasonably believed that the Product contained cinnamon based on its front-label representations.

**III.** **Defendant Is Required to Disclose Natural Flavors on The Front Label**

32. As to the labeling of a product with Natural Flavors, there are specific regulations under 21 C.F.R. §101.22 that companies must follow to properly inform consumers that a product contains Natural Flavors:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other

CLASS ACTION COMPLAINT

means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than onehalf the height of the letters used in the name of the food, except that:

   (i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

*Id.*

33.     The front label of the Product clearly uses the word cinnamon ("Cinnamon Toast") and vignettes (images of cinnamon powder and cinnamon sticks) to directly characterize the primary recognizable flavor in the Product as one derived from cinnamon. Yet, the Product does not contain cinnamon. Instead, the primary recognizable flavor is derived from Natural Flavors.

34.     Under 21 C.F.R. §101.22 (i)(1)(i), because the Product does not contain its characterizing ingredient (i.e., cinnamon), that fact must be indicated on the principal display panel of the Product, in order to properly inform consumers that it does not contain cinnamon, but instead contains Natural Flavors. Specifically,

-11-

CLASS ACTION COMPLAINT

assuming that the "Natural Flavors" in the Product are derived from cinnamon, the front label must indicate that it is "Cinnamon Flavored" or "Natural Cinnamon Flavored."[11] Despite this clear requirement under federal regulations, Defendant did not include either of these phrases on the front label of the Product.

35.    While Plaintiff is not bringing claims under or the FDCA or seeking to enforce 21 C.F.R. §101.22 (i)(1)(i), the fact that the U.S. Food and Drug Administration has such requirements offers further support that consumers can be misled by a product like this one, that has strong cinnamon representations on the front label, but does not in fact contain its characterizing ingredient—cinnamon.

36.    "The difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient [] is not at all subtle, and is very important to the value of the product and thus to the consuming public." Food & Drug Admin., Food Labeling: Spices, Flavorings, Colorings, and Chemical Preservatives, 38 Fed. Reg. 33,284, 33,285 (Dec. 3, 1973).

## IV.    **Defendant's Deceptive and False Advertising Harms Consumers**

37.    Defendant deceptively labeled and packaged the Product to target consumer demand for products flavored with functional ingredients like cinnamon.

38.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution, and sale of the Product, Defendant knew or should have known that the Product falsely and deceptively misrepresents its ingredients.

39.    Defendant knows, knew or should have known, that Plaintiff and other

---

[11] If none of the Natural Flavors in the Product are derived from cinnamon, the front label must indicate that the Product is "artificially flavored." 21 C.F.R. §101.22 (i)(1)(ii). Furthermore, if the Product contains more than one natural flavor, this must also be indicated on the front label of the Product. *See id*. at §101.22 (i)(1)(iii).

-12-

consumers did and would rely on the labeling, packaging, and advertising before purchasing the Product, and would reasonably believe that the Product contained cinnamon.

40.     Plaintiff and other reasonable consumers did not know, and had no reason to know, that the Product does not contain cinnamon. The Product is marketed to consumers with only its front label displayed to consumers in store. However, the front label of the Product does not contain any disclaimer or other statement indicating that it contains no cinnamon. Moreover, reasonable consumers are not required to turn to the back of the label and read the fine print to discover that the Product has no cinnamon, which are facts contrary to Defendant's prominent representations on the front label of the Product.[12]

41.     Because the Product does not contain cinnamon, Defendant's marketing of the Product was and continues to be misleading and deceptive.

42.     By deceptively labeling and misleading consumers, Defendant is in violation of state and federal laws, which prohibit false and misleading labeling.

43.     Each consumer has been exposed to the same or substantially similar deceptive practices because: (1) every Product sold contains the same challenged cinnamon representations; and (2) every Product fails to contain cinnamon.

44.     Plaintiff and other consumers have paid an unlawful premium for the Product. Plaintiff and other consumers would have paid significantly less for the Product had they known that the Product does not contain cinnamon. In the alternative, Plaintiff and other consumers would not have purchased the Product at

---

[12] Indeed, research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging without physically having the product in their hands. *See* Clement, J., *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 Journal of Marketing Management, 917−928 (2007).

-13-

CLASS ACTION COMPLAINT

all had they known that the Product contains no cinnamon. Therefore, Plaintiff and other consumers purchasing the Product suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

45.    As a result of its misleading business practices, and the harm caused to Plaintiff and other consumers, Defendant should be enjoined from continuing to engage in the deceptive business practices described herein. Furthermore, Defendant should be required to pay for all damages caused to consumers, including Plaintiff.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff seeks to represent a Class defined as all California citizens who within the relevant statute of limitations periods, purchased the Product (the "California Class").

47.    Plaintiff also seeks to represent a subclass defined as all California citizens who within the relevant statute of limitations periods, purchased for personal, family, or household purposes the Product ("Consumer Subclass") (with all other classes, collectively referred to as the "Classes").

48.    Excluded from the Classes are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Classes in accordance with Court-approved procedures.

49.    Plaintiff is a member of all Classes.

50.    Plaintiff reserves the right to alter the definition of the Classes as Plaintiff deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of this District, and applicable precedent allow.

51.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide

-14-

basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

52. **<u>Numerosity</u>**: The size of the Classes is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business, Plaintiff believes there are thousands, if not hundreds of thousands, of Class members.

53. **<u>Predominance of Common Questions of Law and Fact</u>**: There are questions of law and fact common to the Classes. These questions predominate over any questions affecting only individual Class members.

54. All Class members were exposed to Defendant's deceptive advertising and marketing representations indicating that the Product contains cinnamon, when in fact, it does not.

55. Furthermore, common legal and factual questions include but are not limited to:

    a. whether Defendant engaged in the course of conduct alleged herein;

    b. whether Defendant's conduct is likely to deceive a reasonable consumer;

    c. whether Defendant's conduct constitutes an unfair or deceptive act or practice;

    d. whether Defendant violated the consumer protection statutes set forth below;

    e. whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

    f. whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

-15-

CLASS ACTION COMPLAINT

56.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will materially advance the litigation.

57.   **Typicality**: Plaintiff's claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members were subject to Defendant's false, misleading, and unfair representations indicating that the Product contains cinnamon when, in fact, it does; and Plaintiff seeks the same relief as Class members.

58.   Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

59.   **Adequacy of Representation**: Plaintiff is a fair and adequate representative of the Classes because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff has selected competent counsel that is experienced in class action and other complex litigation. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously and have the resources to do so.

60.   **Injunctive or Declaratory Relief**: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief an appropriate remedy.

61.   **Superiority**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including

-16-

CLASS ACTION COMPLAINT

but not limited to the following:

    a.     The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

    b.     Further, it would be virtually impossible for Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

    c.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

    d.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

/ / /

/ / /

-17-

CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750,** *et seq*
(*for the Consumer Subclass*)

62.     Plaintiff realleges Paragraphs 1-61 above as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the proposed Consumer Subclass.

64.     The Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchase of the Product by Plaintiff and members of Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

65.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By marketing the Product with its current label, packaging, and advertisements, Defendant has represented and continues to represent that the Product has certain characteristics (e.g., cinnamon) when, in fact, it does not. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

66.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Product with its current label, packaging, and advertisements, Defendant has represented and continues to represent that the Product is of a particular quality (i.e., that the Product has cinnamon) even though it does not meet this quality. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

67.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling, packaging, and marketing the Product as containing cinnamon, so that a reasonable consumer would believe that it has cinnamon, and then intentionally not selling the Product with cinnamon, Defendant has violated section 1770(a)(9) of the CLRA.

-18-

68.     At all relevant times, Defendant has known or reasonably should have known that Plaintiff and other members of the Consumer Subclass would reasonably and justifiably rely on the representations on the front label in purchasing the Product.

69.     Plaintiff and members of the Consumer Subclass have reasonably and justifiably relied on Defendant's misleading and fraudulent conduct when purchasing the Product. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Product may be presumed or inferred for Plaintiff and members of the Consumer Subclass.

70.     Plaintiff and members of the Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Product or would have paid significantly less for it had they known that Defendant's conduct was misleading and fraudulent.

71.     Under Cal. Civ. Code § 1780(a), Plaintiff and members of the Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices.

72.     Pursuant to Cal. Civ. Code § 1782, on September 17, 2021, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant's principal office address in New York, New York.

73.     The CLRA letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendant failed to comply with the letter.

74.     Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after it received the

-19-

1  notice and demand letter, Plaintiff timely filed his complaint against Defendant.

2       75.    Attached hereto is an affidavit with facts showing that venue in this

3  Court is proper pursuant to California Civil Code § 1780(d).

### SECOND CLAIM FOR RELIEF
**Violation of California's False Advertising Law**
**CAL. BUS. & PROF. CODE § 17500 *et seq.***
**(*for the California Class*)**

7       76.    Plaintiff realleges Paragraphs 1-61 above as if fully set forth herein.

8       77.    Plaintiff brings this claim individually and on behalf of the members of

9  the California Class.

10       78.    The FAL prohibits advertising "which is untrue or misleading, and

11  which is known, or which by the exercise of reasonable care should be known, to be

12  untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

13       79.    As detailed above, Defendant's marketing and sale of the Product as

14  containing cinnamon is likely to deceive a reasonable consumer because the Product

15  does not contain cinnamon.

16       80.    In reliance of Defendant's false and misleading representations

17  indicating the Product contains cinnamon, Plaintiff and the other members of the

18  California Class purchased the Product. Moreover, based on the very materiality of

19  Defendant's fraudulent and misleading conduct, reliance on such conduct as a

20  material reason for the decision to purchase the Product may be presumed or inferred

21  for Plaintiff and the members of the California Class.

22       81.    Defendant knew or should have known that its labeling and marketing

23  of the Product is likely to deceive a reasonable consumer.

24       82.    Plaintiff and members of the California Class request that this Court

25  cause Defendant to restore this fraudulently obtained money to Plaintiff and

26  members of the California Class, to disgorge the profits Defendant made on these

27  transactions, and to enjoin Defendant from violating the FAL or violating it in the

-20-

CLASS ACTION COMPLAINT

same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200 *et seq.***
**(*for the California Class*)**

83.    Plaintiff realleges Paragraphs 1-61 above as if fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the members of the California Class.

85.    The circumstances giving rise to Plaintiff's allegations, and the members of the California Class, include Defendant's corporate policies regarding the marketing, sale, and provision of the Product.

86.    The UCL prohibits "unfair competition," which it defines to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]." CAL. BUS. & PROF. CODE § 17200.

87.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

88.    As detailed herein, Defendant's acts, misrepresentations, omissions, practices, and/or non-disclosures concerning the Product violate the FAL and the CLRA (as detailed *supra*).

89.    On account of each of these violations of state and federal law, Defendant has also violated the "unlawful" prong of the UCL.

90.    As a result of Defendant's unlawful business acts and practices, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class.

91.    Under the UCL, a business act or practice is "unfair" if the defendant's

-21-

conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts of practices are outweighed by the gravity of the harm to the alleged victims.

92.     Defendant's conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and is injurious to consumers who purchased the Product and were deceived by Defendant's misrepresentations. Deceiving consumers about the Product's ingredients is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

93.     As a result of Defendant's unfair business acts and practices, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class.

94.     Defendant also committed "fraudulent" business acts or practices by, among other things, engaging in conduct Defendant knew or should have known would likely to and did deceive reasonable consumers, including Plaintiff and the members of the California Class. By relying on Defendant's false and misleading representations indicating the Product contained cinnamon, Plaintiff and the other members of the California Class purchased the Product. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Product may be presumed or inferred for Plaintiff and the members of the California Class.

95.     Defendant knew or should have known that its labeling and marketing of the Product would likely deceive a reasonable consumer.

96.     Plaintiff and members of the California Class request that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the California Class, to disgorge the profits

CLASS ACTION COMPLAINT

Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and members of the California Class, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**California Commercial Code § 2313**
(*for the California Class*)

97.     Plaintiff realleges Paragraphs 1-61 above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

99.     California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

100.    Defendant has expressly warranted on the front label of the Product that it contained cinnamon. This representation about the Product: (1) is an affirmation of fact and promises made by Defendant to consumers that the Product contains cinnamon; (2) became part of the basis of the bargain to purchase the Product when Plaintiff relied on the representation; and (3) created an express warranty that the Product would conform to the affirmation of fact or promise. In the alternative, the representation made about the Product is a description of goods which were made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the Product's representation.

101.    Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranty, believing that the Product did in fact

-23-

conform to the warranty.

102.   Defendant has breached the express warranty made to Plaintiff and members of the California Class by selling the Product without cinnamon.

103.   Plaintiff and members of the California Class paid a price premium for the Product but did not obtain the full value of the Product as it was represented. If Plaintiff and members of the California Class had known of the true nature of the Product, they would not have purchased the Product or would not have been willing to pay the price premium associated with the Product.

104.   As a result, Plaintiff and the California Class suffered injury and deserve to recover all damages afforded under the law.

## FIFTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### California Commercial Code § 2314(2)(f)
### (*for the California Class*)

105.   Plaintiff realleges Paragraphs 1-61 above as if fully set forth herein.

106.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Class.

107.   California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

108.   California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

109.   Defendant is a merchant with respect to the sale of the Product. Therefore, a warranty of merchantability is implied in every contract for sale of the Product to California consumers.

-24-

110. By advertising the Product with its current labeling, Defendant made a promise on the label of the Product that it contained cinnamon. But the Product has not "conformed to the promises…made on the container or label" because it does not contain cinnamon as outlined above. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

111. Therefore, the Product is not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Product.

112. If Plaintiff and members of the California Class had known that the Product did not contain cinnamon, they would not have been willing to pay the price premium associated with it or would not have purchased it at all. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A.    certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.    declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Defendant has committed the violations of law alleged herein;

D.    providing for any and all injunctive relief the Court deems appropriate;

E.    awarding statutory damages in the maximum amount for which the law provides;

-25-

CLASS ACTION COMPLAINT

1    F.    awarding monetary damages, including but not limited to any

2 compensatory, incidental, or consequential damages in an amount that the Court or

3 jury will determine, in accordance with applicable law;

4    G.    providing for any and all equitable monetary relief the Court deems

5 appropriate;

6    H.    awarding punitive or exemplary damages in accordance with proof and

7 in an amount consistent with applicable precedent;

8    I.    awarding Plaintiff reasonable costs and expenses of suit, including

9 attorneys' fees;

10    J.    awarding pre- and post-judgment interest to the extent the law allows;

11 and providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: December 6, 2021                    Respectfully submitted,

*/s/ Benjamin Heikali*

**FARUQI & FARUQI, LLP**
Benjamin Heikali (State Bar No. 307466)
*bheikali@faruqilaw.com*
Ruhandy Glezakos (SBN 307473)
Email:  *rglezakos@faruqilaw.com*
Joshua Nassir (State Bar No. 318344)
Email:  *jnassir@faruqilaw.com*
10866 Wilshire Boulevard, Suite 1470
Los Angeles, California 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Counsel for Plaintiff*
*and the Proposed Classes*

-26-

CLASS ACTION COMPLAINT

DocuSign Envelope ID: 948C6229-D507-4328-8196-8B84A0B5E651

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Melissa Majak, declare as follows:

1.     I am the Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.     This Class Action Complaint is filed in the proper place of trial because the transaction giving rise to my claims (my purchase of the Product at issue) occurred in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed on _____ in Cerritos, California.

11/30/2021 | 3:09 PM PST

DocuSigned by:

*Melissa Majak*

FA3CFE7426D944E...

Melissa Majak